Lehigh Valley Fire Insurance Company, To Use of James B. Deshler et al., Assignees, Plff. in Err., *v.* Henry Dryfoos et al., Now or Late Doing Business as Dryfoos, Grier, & Youngman.

In an action to recover insurance assessments, *held*, that if the assessments are not much in excess of the amount actually required for the payment of losses, the presumption is that the gross sum was properly laid in view of the costs attending the collection of numerous small amounts, and the probable insolvency of the makers of some of the notes.

In such cases the burden of showing the assessment to be excessive is on the person alleging it to be so.

The assessment, however, may be so much in excess of the amount required for the payment of losses, as to change the burden of proof, and compel the company to prove that it is reasonably proper, considering all the circumstances. In such case, if the company wholly fails to give any evidence showing the sum to be reasonably proper, the trial court may give binding instructions to the jury to find for the defendant.

(Argued April 12, 1887.  Decided April 25, 1887.)

January Term, 1887, No. 268, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.  Error to the Common Pleas of Luzerne County to review a judgment on a verdict directed for defendants on the second trial of an action to recover insurance assessments.  Affirmed.

This action was brought by the assignees for the benefit of creditors of the Lehigh Valley Fire Insurance Company in the name of such company, against defendants, partners doing business as Dryfoos, Grier, & Youngman, to recover assessments on two policies of fire insurance, issued by plaintiff company to the defendants.  Upon the first trial of the action a verdict was rendered for plaintiff.

Upon the rule for a new trial this verdict was set aside.  RICE, P. J., delivered the following opinion:

On February 2, 1877, the plaintiff company made an assignment for the benefit of its creditors.  On March 28, following, the directors met and passed the resolution of assessment, upon

which this action was based. The resolution is important, and we quote it at length:

"Whereas, In consequence of losses by fire and other liabilities, amounting in the aggregate to about $50,000, the L. V. Fire Ins. Co. has made an assignment for the benefit of its creditors, and in order that the affairs of the company may be settled as speedily as possible—Therefore, Resolved, that an assessment on the members of the company be laid, to the amount of the premium notes given by them, less all previous assessments, to pay on the losses by fire and other expenses of the company, and that the same be collected by the assignees in instalments until all the said losses and expenses shall have been adjusted and paid."

On the trial the plaintiff recovered. The defendants' first proposition in support of the present rule is thus stated: "The assessment, as shown by the plaintiff's testimony, was unauthorized, illegal, excessive, and void; and the court should have so instructed the jury in accordance with defendants' first, second, and third points."

We are of opinion that the resolution above quoted contained all the essential elements of an assessment, and was valid as such, provided the facts, as they existed at the time it was made, justified it. It implies an ascertainment by the directors of the losses and liabilities which the assessment was intended to cover, and contains a statement of the amount with reasonable certainty; it also declares the rate which each member was to pay. What remained was a mere matter of calculation from known data. We think it was not necessary to specify the losses in detail, inasmuch as it covered all the unpaid losses and liabilities of the company; and it certainly was not necessary to set forth the name and amount of assessment of each policy holder, or member whose policy had expired, but whose premium note was still liable to assessment for the losses which had accrued. Lycoming F. Ins. Co. v. Rought, 97 Pa. 415; Sands v. Sanders, 26 N. Y. 244, 28 N. Y. 416.

But we were asked to give binding instructions that the assessment was not justified by the facts which were shown by the evidence to have existed at the time it was made. In deciding whether the court erred in refusing instructions to this effect, we recognize the principle that that view of the evidence must be taken which is most favorable to the plaintiff. In other words,

if any fair view of the evidence authorized the submission of the question to the jury, their verdict should not be disturbed, even though the court might possibly have reached a different conclusion from the same evidence.

The first fact which may be taken as established is that the company was insolvent. This, in itself, justified an assessment of some amount. Schimpf v. Lehigh Valley Mut. Ins. Co. 86 Pa. 373.

But there are many different phases of insolvency, and it does not necessarily and conclusively follow that the directors of a mutual insurance company would be thereby justified in making an assessment of the full amount of all the premium notes in force, merely because of the inability of the company to discharge all of its liabilities at once. The delay incident to the collection of a sufficient sum from the members to meet the losses and liabilities which had accrued might be, and undoubtedly was in this case, ample justification for ceasing business and making an assignment for the benefit of creditors, but was not a conclusive justification for an assessment of 100 per cent on all the premium notes in force. The liability of a member of a mutual insurance company on his premium note, left as a deposit as the basis of an assessment, should occasion arise, is not an absolute liability to pay the whole amount of his note; but it is conditional, and depends upon the contingency of the happening of losses and expenses to which he shall be liable to contribute, which have been duly ascertained by the directors and which made necessary a resort to an assessment thereon. May, Ins. § 557.

This liability is not changed by the facts which may dictate or require an assignment for the benefit of creditors. Notwithstanding the assignment, the functions of the directors, so far as assessments are concerned, remained the same; and their discretion in that matter remained to be exercised according to the same rule of law as before. "That instrument passed only the assets of the corporation, not its franchises." Schimpf v. Lehigh Valley Mut. Ins. Co. 86 Pa. 373.

Coming now to the evidence as to the condition of the company, we think it is safe to say that there was evidence proper to be submitted to the jury of losses which had occurred in the years 1874–1877 (during most of which time the defendants' policies were in force), amounting with interest to between $40,000 and

$50,000. There was also evidence that the amount of premium notes liable to assessment was $174,000. Of this amount $79,-391.27 were notes which belonged to policies still in force on December 1, 1876, but how long they had been in force does not appear. The residue belonged to policies which had expired before that time; but when they had expired, whether before or after defendants' policies were issued, does not appear by any express evidence. But inasmuch as they were included in Mr. Datesman's statement to the board, and as that statement was admitted in evidence for the purpose of showing upon what basis the assessment was made, they cannot safely be disregarded. We have, then, adopting Mr. Datesman's statement, the following figures, showing approximately the general condition of the company's affairs when the assessment was made:

December 1, 1876, Premium notes in force belonging to unexpired policies ....................$ 79,391.27
Premium notes liable to assessment, including the above ................................. 174,000.00
Unpaid losses for 1874 ............$12,408.41
Unpaid losses for 1875 .............. 22,437.06
Unpaid losses for 1876 .............. 12,901.63

Total .........................$47,747.10

Did this state of affairs authorize the directors to make an assessment of the full amount of all the premium notes in force? After a more careful examination of the evidence and the authorities than we could make on the trial we are led to the conclusion that prima facie it did not. "By the terms of the charter and the premium note the assured, as a member of the corporation, submits himself to the acts of the directors, as the common representative of all the members. He and they are all bound by the assessments made by them unless he can show fraud or gross mistake. This is a rule of law he has no right to complain of." Hummel's Appeal, 78 Pa. 320.

It would seem, therefore, that unless there is something on the face of the assessment to show its unreasonableness, the prima facie presumption is in its favor. Any other rule would be inconsistent with the nature of the contract, and would subject

the company in its practical workings to manifold inconveniences. Nevertheless, the presumption in favor of the action of the directors is not conclusive.

"Assessments must be limited to the objects declared in the charter and by-laws. The managers may exercise a reasonable discretion in fixing the amount to be raised, for the charter must be construed in reference to its practical working. The actual sum required can be ascertained, but as expense must be incurred in the collection, and loss be sustained in consequence of insolvency of members, proper allowances may be made for failures likely to result from these and other causes; and if the allowances are reasonable in amount and consistent with good faith on the part of the managers they will not vitiate the assessment. But if these reasonable limits are disregarded and transcended purposely or by culpable carelessness, the assessment is illegal and void. Jones v. Sisson, 6 Gray, 288; People's Equitable Mut. F. Ins. Co. v. Babbitt, 7 Allen, 235. In the latter case and in Traders' Mut. F. Ins. Co. v. Stone, 9 Allen, 483, it was held that an addition to the debts and reasonable allowance of 100 per centum was so unreasonable as to make the assessment void. In those cases there was no evidence tending to justify so large an addition or excess; and in the absence of such evidence so large an excess, in most cases, would be prima facie proof of fraud or gross negligence." Rosenberger v. Washington Mut. F. Ins. Co. 87 Pa. 207.

Taking the facts as they were presented to the board by Mr. Datesman's statement, we think the discrepancy between the total losses and the whole amount of premium notes which seemed to be liable to assessment for at least a portion of the losses is too great to be considered a reasonable allowance for expenses and uncollectable claims, without some express evidence to warrant that inference.

Further, if an assessment of the full amount of all the premium notes in force was so grossly excessive as to be vitiated thereby, we do not think it was cured by the concluding direction to the assignee to collect the same "in instalments, until all the said losses and expenses shall have been adjusted and paid." If the assessment of the full amount of all the notes was warranted, we admit that this direction to the assignee would not invalidate it. But if an assessment of that amount was not justified, the directors might as well have omitted to make an as-

sessment at all, and simply directed the assignee to exercise his discretion and to collect such proportions of the premium notes as might be found necessary. They could not so delegate their functions; and if the assessment depended for its validity solely on that direction to the assignee, we think it would be void for uncertainty.

The next question is whether the assessment was valid as against these defendants. There seems to be good sense in and authority for the proposition that if the ascertained losses accruing during the time that the defendants' policies were in force were so large as to justify an assessment of the full amount of their notes, they cannot object to the validity of the assessment merely because other notes were included therein which would not be liable to contribute for any or all of those losses. Sands v. Sanders, 26 N. Y. 244; 28 N. Y. 416; Long Pond Mut. F. Ins. Co. v. Houghton, 6 Gray, 77.

To illustrate we quote from the opinion in the last-cited case: "The case of the other defendant, Hunt, stands in a different position in this respect. Having become a member before the 8th of August, 1850, he might properly be assessed for all the losses and expenses after that date and before the assessment was made. It is no objection, open to him, to the validity of the assessment that individuals who had more recently become members were also assessed for these losses, for some of which they were not liable. He is not injured thereby, as his assessment is not increased but diminished. He is therefore liable for the assessment."

Applying this principle to the case in hand it follows that while the general assessment was prima facie invalid, on the ground of excessiveness, it was competent for the plaintiff to show, if he could: that it was not excessive so far as these defendants were concerned, and hence was not void as to them. But being prima facie invalid, on the facts already stated, the burden was cast on the plaintiff of showing that it was valid as against the defendants. And here we think there is a failure of proof. The defendants became members of the company in the early part of 1874, their first policy being dated February 4, and their second June 1. The assessment was made for losses occurring in the years 1874, 1875, 1876, and the early part of 1877. In order, therefore, to ascertain whether the defendants would be liable to an assessment of the full amount of their

notes to cover these losses it is essential to know, at least approximately: first, the date and amount of each loss; second, the whole amount of premium notes in force on that date and liable to assessment for that particular loss. With these data the percentage of each loss to be borne by the defendants would be a mere matter of calculation; and the sum of the percentages would constitute the ratio for ascertaining the amount which the defendants ought to contribute for the total losses. To this amount the directors are authorized to add reasonable allowances for expenses of collection, insolvency of members, and other proper matters.

As we have already stated, the evidence shows the losses, and in many, if not most, of the cases the particular dates and amounts, with reasonable certainty. It also shows the total amount of premium notes in force, and the amount of premium notes belonging to policies in force on December 1, 1876. But it fails to show the total amount of premium notes in force at the time of each loss, and liable to assessment for the same; hence, the jury had not the data before them for ascertaining the particular fact which, in view of the prima facie effect of the evidence as to the total amount of losses and the total amount of premium notes apparently assessed to pay the same, was essential to the plaintiff's recovery.

We have not overlooked the testimony of Mr. Stackhouse. But it is to be observed, with regard to his testimony, that his calculation and statement were not the acts of the directors, or of their officer or clerk. They were made by Mr. Stackhouse, after the assignment, as clerk for the assignee, and did not constitute part of the directors' action in making the assessment. Therefore they cannot be allowed to have any conclusive or even prima facie effect as the acts of the defendants' agents. In so far as his calculation and statement were based on data in evidence, we think they were competent, but not beyond that; hence, they were not evidence *per se* of the premium notes outstanding and liable to assessment at the respective dates of the several losses; and not finding any other evidence in the record of that fact we are led to the conclusion that the defendants' third point should have been affirmed.

This conclusion renders any discussion of the other rulings of the court complained of unnecessary. As these questions are

likely to arise on the second trial of the case it is advisable to express no opinion upon them in advance.

The reason based on the alleged misconduct of counsel in the argument to the jury is not sustained. It is undoubtedly improper, and this the counsel concedes frankly, to allude to evidence which has been offered and rejected. But we are fully satisfied that any injurious effect which might have resulted from the transgression of this rule by the plaintiff's counsel was totally destroyed by the remarks which the defendants' counsel immediately made to the opposing counsel and to the jury.

The reason based on the alleged misconduct of one of the jurors is also overruled. If the juror said to his fellow jurors what, according to the testimony of the tipstaff, he admitted he said, his conduct deserves condemnation. But we do not think the evidence as to his declarations, after the verdict had been agreed upon, is competent. Under the policy of the law, evidence of the fact could not be received directly from his lips; a fortiori, second-hand proof consisting of his unsworn admissions of the fact cannot be received to impeach the verdict. Building Asso. v. Mitchell, 2 Kulp, 343, and cases cited.

The rule is made absolute.

On the second trial the case was submitted to the jury upon the evidence adduced upon the first trial, the case to be ruled upon by the court upon that testimony. The court instructed the jury to find a verdict for the defendants; and plaintiff assigned such action of the court as error.

*F. W. Wheaton, E. P. & J. V. Darling,* for plaintiff in error. —In Rosenberger v. Washington Mut. F. Ins. Co. 87 Pa. 207, this court said: "Assessments must be limited to the objects declared in the charter and by-laws. The managers may exercise a reasonable discretion in fixing the amount to be raised, for the charter must be construed in reference to its practical working. The actual sum required can be ascertained; but as expenses must be incurred in the collection, and loss be sustained in consequence of insolvency of members, proper allowances may be made for failures, likely to result from these and other causes; and if the allowances are reasonable in amount and consistent with good faith on the part of the managers, they will not violate the assessment."

The true rule is laid down in Hummel's Appeal, 78 Pa. 320, *viz.:* that the presumption is that the assessment is properly made. The insured and the insurers are all bound by the assessments made by them, unless the insured can show fraud or gross mistake. :

*Allan H. Dickson* and *Henry W. Palmer,* for defendants in error.—The liability of a member of a mutual insurance company on his premium notes is not absolute but conditional on the happening of losses and expenses to which he shall be liable to contribute, which have been duly ascertained by the directors, and which make necessary a resort to an assessment. Hays v. Lycoming F. Ins. Co. 99 Pa. 626.

The directors act in a judicial capacity; and while in the absence of fraud each member is bound by their finding of the facts, yet they must find these facts in order to bind a member. The duty cannot be delegated to an assignee nor to his clerk. Hurlbut v. Carter, 21 Barb. 221.

The mere fact of an actual assessment is not sufficient. It must be judicially made in accordance with the act and by-laws. Atlantic Mut. F. Ins. Co. v. Fitzpatrick, 2 Gray, 279.

An assessment by a mutual insurance company upon its members, of a greater amount than is necessary to meet existing just claims against it, together with a reasonable allowance for expenses and failures to collect, is invalid; and for these purposes an allowance of a sum more than the whole amount of the deficiency is unreasonable. People's Equitable Mut. F. Ins. Co. v. Babbitt, 7 Allen, 235; Traders' Mut. F. Ins. Co. v. Stone, 9 Allen, 483; Jones v. Sisson, 6 Gray, 288; Rosenberger v. Washington Mut. F. Ins. Co. 87 Pa. 212.

If it appears from the plaintiff's evidence that the assessment was more than double the amount of the losses, and that it was levied without ascertainment of, or regard to, the proportionate amount each note maker should pay, the court should grant a. nonsuit or give binding instructions. In no other way can there be a uniform administration of the law. Great Falls Mut. F. Ins. Co. v. Harvey, 45 N. H. 292; cases above cited.

It is said by this court in Rosenberger v. Washington Mut. F. Ins. Co. 87 Pa. 211: "Nothing can be more certain than that the managers had no authority to make assessments in anticipation of losses." Nor does this doctrine apply only to solvent

companies that continue to do business.    The assignment fixes the status of the claims.    Those in existence then have a vested right in that fund, and no subsequent creditor can make any claim upon it, or acquire any rights to it.    Coston v. Alleghany County Mut. Ins. Co. 1 Pa. St. 322; Dean's Appeal, 98 Pa. 101.

Moreover, there was no testimony of any extraordinary failure to make collections, as there was in the case of Buckley v. Columbia Ins. Co. 92 Pa. 501.

If there is such a failure, the company may protect its creditors by a new assessment to cover the deficiency.    Bangs v. Gray, 12 N. Y. 477.

The assessment need not be made forthwith upon the happening of every loss, but upon a rule approximating thereto as near as reasonable and practicable.    New England Mut. F. Ins. Co. v. Belknap, 9 Cush. 140; Shaughnessy v. Rensselaer Ins. Co. 21 Barb. 605.

The act of assembly provides that the assured shall be "members during the period that they shall remain insured, and no longer."    See Act April 2, 1856, § 11, Purdon's Digest, 793, pl. 12, 10th ed.; Great Falls Mut. F. Ins. Co. v. Harvey, 45 N. H. 292; People's F. Ins. Co. v. Hartshorne, 90 Pa. 470; Susquehanna Mut. F. Ins. Co. v. Tunkhannock Toy Co. 15 W. N. C. 306.

The plaintiff's counsel claim that the reasonableness of this assessment should have been submitted to the jury, and rests on the cases of Hummel's Appeal, 78 Pa. 320, and Rosenberger v. Washington Mut. F. Ins. Co. 87 Pa. 212.

In the former case the directors did ascertain the facts, and the master reported as a fact that "the charter has been substantially followed in making the assessment."

In the latter case there was a conflict of testimony.    The plaintiff's testimony showed a valid assessment by the directors. The defendant's testimony tended to show that the rate levied was excessive.    The court held that under such circumstances it was a question for the jury.

PER CURIAM:

It is true that assessments considerably in excess of the amount actually required for the payment of losses have frequently been sustained.    If not much in excess the presumption is that the gross sum was properly laid in view of the costs at-

tending the collection of numerous small amounts, and the probable insolvency of the makers of some of the notes.   In such cases the burden of showing the assessment to be excessive is on the person alleging it to be so.   The assessment, however, may be so much in excess of the amount required for the payment of losses, as to change the burden of proof, and compel the company to prove that it is reasonably proper in considering all the circumstances.

That is just this case; and the company having wholly failed to give any evidence showing the sum to be reasonably proper, there was no error in giving binding instructions to the jury to find for the defendants.   The reasons for this conclusion are well stated in the able opinion of the learned judge in discharging the rule for a new trial.

Judgment affirmed.